[991 NE2d 704, 969 NYS2d 846]

MARCIA A. WILD et al., as Coexecutors of MARGUERITE HORN, Deceased, et al., Respondents, v CATHOLIC HEALTH SYSTEM, Doing Business as MERCY HOSPITAL OF BUFFALO, et al., Defendants, and BUFFALO EMERGENCY ASSOCIATES, LLP, et al., Appellants.

Argued April 24, 2013; decided June 6, 2013

## APPEARANCES OF COUNSEL

*Damon Morey LLP*, Buffalo (*Michael J. Willett* and *Patrick B. Curran* of counsel), for appellants.

*Paul William Beltz, P.C.*, Buffalo (*Debra A. Norton* and *William A. Quinlan* of counsel), for respondents.

## OPINION OF THE COURT

MEMORANDUM.

The Appellate Division order should be affirmed, with costs.

Defendants Dr. Raquel Martin and her firm, Buffalo Emergency Associates, LLP, challenge a jury verdict in favor of plaintiffs in this medical malpractice action against Dr. Martin

and several other institutional and individual defendants, for negligence resulting in injury to plaintiff Marguerite Horn. Defendants claim that the jury charge improperly reduced plaintiffs' burden of proof. We disagree.

In 2005, decedent, an 83-year-old woman, was rushed to a hospital after her 89-year-old husband, Joseph Horn, found her unresponsive and on the floor of their home. At the hospital, the emergency room physician, defendant Dr. Martin, concluded that Horn had difficulty breathing and may have suffered a stroke. Attempts were made to insert an endotracheal tube in Horn's throat, including two unsuccessful attempts by Dr. Martin, during one of which Dr. Martin inserted the tube into Horn's esophagus. After several failed attempts an anesthesiologist successfully intubated her.

During the intubation procedure Dr. Martin observed a subcutaneous emphysema under Horn's skin. However, not until days later did physicians finally discover that Horn's esophagus had been perforated during intubation. Surgical attempts at repair proved unsuccessful, and, as a consequence, for the three remaining years of her life, until her death of an unrelated cause, Horn was unable to consume foods or liquids by mouth, and required a feeding tube, as well as the daily assistance of her husband, for her nutritional intake.

A jury found Dr. Martin solely liable and returned a one million dollar plaintiffs' verdict of $500,000 for the decedent's pain and suffering and $500,000 for the husband's loss of consortium. The Appellate Division unanimously affirmed, on plaintiffs' stipulation to a reduction of the loss of consortium damages to $200,000 (85 AD3d 1715 [2011]).

On appeal, defendants contend that the trial court improperly instructed the jury on the loss-of-chance theory of liability because New York State has not yet adopted this theory, and the charge relaxed the plaintiffs' burden of proof.* Defendants base their argument on the following jury charge language:

> "The negligence of any of the defendants may be considered a cause of the injuries to [decedent] if

---

* The loss-of-chance theory, in certain jurisdictions, " 'grant[s] recovery to patients for deprivation of the opportunity of more beneficial treatment and the resulting gain in life expectancy or comfort, although the evidence fails to establish a reasonable probability that without defendant's negligence a cure was achievable' " (*Hill v Novartis Pharms. Corp.*, 944 F Supp 2d 943, 963 [ED Cal 2013], quoting *Williams v Wraxall*, 33 Cal App 4th 120, 135, 39 Cal Rptr 2d 658, 667 [1995]).

you find the defendant[s'] actions or omissions deprived [decedent] of a substantial possibility of avoiding the consequences of . . . having a permanent feeding tube. The chance of avoiding the need for a [permanent] feeding tube in order to be substantial does not have to be more likely than not, it does not have to be more than 50 percent, but it has to be more than . . . slight."

In response, plaintiffs argue that defendants' challenge based on the viability of a loss-of-chance theory of liability under New York law is unpreserved, and that regardless, the jury charge was proper.

■ As a threshold matter we agree that the defendants' challenge to the viability of the loss-of-chance theory as articulated on appeal is unpreserved. The record indicates that defendants did not present the trial court with a direct challenge to the underlying theory of negligence propounded during the trial and eventually charged to the jury. Instead, counsel challenged the jury charge on the ground that the "facts of this case" do not support a loss-of-chance charge, not that such charge is wholly unavailable under New York law. Thus, the concern raised with the trial court was that plaintiffs had failed to present a factual basis for the charge, not that as a legal matter, regardless of the evidence, such a charge was prohibited under New York law. Moreover, defendants' challenge was asserted as part of counsel's request for adherence to the Pattern Jury Instructions (PJI) because, counsel argued, the proposed language deviated from the PJI in a way that changed the burden of proof. Thus, the sum and substance of defendants' argument before the trial judge was that plaintiffs failed to present evidence in support of the charge which sought to instruct the jury on a negligence theory of loss-of-chance, and that the jury charge erroneously reduced the plaintiffs' burden of proof and relaxed the standard for causation. Defendants' broad challenge to the loss-of-chance doctrine is unpreserved and is not properly before the Court (*see generally Up-Front Indus. v U.S. Indus.*, 63 NY2d 1004 [1984]; *see also Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II*, 20 NY3d 268, 284 [2012]).

■ We now turn to defendants' contention, preserved below, that the trial court improperly reduced plaintiffs' burden of proof. It is well settled that a "plaintiff must generally show that the defendant's negligence was a substantial factor in

producing the injury" to satisfy "the burden of proving a prima facie case" in a medical malpractice action (*see Lyons v McCauley*, 252 AD2d 516, 517 [2d Dept 1998], *lv denied* 92 NY2d 814 [1998]; *see also Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]). Here, the trial court recited the proximate cause charge directly from the PJI and explicitly instructed the jury as to plaintiffs' burden of proof in the case. The court charged the jury using the language from PJI 2:70, as follows: "An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury. That is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury." Further, at the outset of the charge, the court instructed the jury that "the burden of the proof in this case rests with the plaintiffs," and made clear that the plaintiffs had to establish by a preponderance of the evidence defendants' negligence. Taking this jury charge as a whole, we do not find support for defendants' contention of an improper alteration of the causation standard or plaintiffs' burden of proof (*Nestorowich v Ricotta*, 97 NY2d 393, 401 [2002]).

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and RIVERA concur; Judge ABDUS-SALAAM taking no part.

Order affirmed, with costs, in a memorandum.